[No. 43855-1-II.   Division Two.   April 8, 2014.]

THE STATE OF WASHINGTON, *Respondent*, v. BRYAN VANCE DUNN, *Appellant*.

*Jennifer M. Winkler* (of *Nielson, Broman & Koch PLLC*), for appellant.

*Anthony F. Golik, Prosecuting Attorney*, and *Rachael R. Probstfeld, Deputy*, for respondent.

¶1 JOHANSON, J. — A jury found Bryan Vance Dunn guilty of one count of residential burglary and three counts of unlawful imprisonment. Dunn argues that (1) the trial court violated his right to a public trial, (2) the information was defective as to the unlawful imprisonment counts, (3) the jury instruction defining knowledge was erroneous, (4) the prosecutor engaged in misconduct during closing argument, (5) the trial court erred by excluding videos taken on a victim's cell phone, and (6) the trial court violated Dunn's right to be present. We address his arguments regarding the right to a public trial in the published portion of this opinion. Dunn's remaining arguments are addressed in the unpublished portion of this opinion. We affirm Dunn's convictions.

## FACTS

¶2  On May 13, 2012, three minors, J.P., A.P., and M.C., were at J.P. and A.P.'s house.[1] J.P. was 14 at the time; A.P., J.P.'s younger sister, was 11; M.C., a close friend of J.P. and A.P., was 13. Shortly after the girls woke up, someone knocked on the door. A.P. answered the door, and a Hispanic man she did not know, later identified as Luciano Cruz, was at the door. A.P. closed the door and went to ask J.P. what to do. J.P. returned to the living room with A.P. and M.C. and saw that Cruz and two white men had entered the house and were sitting on the couch. One of the white men was later identified as Dunn. J.P. repeatedly told the men to leave the house, but they just laughed at her. Cruz told the girls to go get dressed because they were leaving.

¶3  After the girls got dressed, Cruz, Dunn, and the third man took the girls to a two-door car. The three girls got into the car's backseat with Cruz. Dunn was driving, and the third man sat in the front passenger seat. Dunn drove to a house on St. John's Street, where Cruz and the other man got out of the car and went into the house. The three girls remained in the car and spoke to each other in Spanish. When Cruz and the other man returned to the car, Cruz was carrying a plate of food with hot sauce on it. Some hot sauce dripped onto A.P.'s leg, and Cruz wiped it off with his finger and then licked his finger.

¶4  Dunn took everyone to a Burgerville drive-through. Dunn then stopped at a house the girls said was M.C.'s house, although it was not M.C.'s house. When the car stopped, Cruz got out; then all three girls got out, jumped a fence, and ran across a field. The girls ran to a video store, and they called J.P. and A.P.'s older sister to pick them up. About the same time, J.P. was able to contact her mother, Anita Carvajal, who immediately returned home. Carvajal

---

[1] We refer to the minor victims by their initials to protect their privacy.

and the girls arrived home at approximately the same time, and they contacted the police.

¶5 Vancouver Police Department officers and detectives responded to Carvajal's home. Detective Julie Carpenter interviewed each girl separately. Then the girls directed the detectives to the St. John's Street house. A few days later, Detective Edward Letarte met A.P. and J.P. at school, where both girls identified Dunn as the car's driver. Letarte spoke with each girl separately. After his arrest, Dunn gave a statement to the police.

¶6 The State filed a second amended information charging Dunn with one count of residential burglary and three counts of unlawful imprisonment. After a CrR 3.5 hearing, the trial court found that Dunn's statement to police was admissible. Dunn also asked to admit cell phone videos that J.P. had recorded during the incident. The trial court excluded the cell phone videos, ruling that the videos lacked relevance, contained nothing that would be helpful to the jury, and were relevant only to collateral issues that "would simply distract from the evidence." Report of Proceedings (Aug. 14, 2012) at 83.

¶7 At trial, J.P., A.P., and M.C. testified to the facts related above, although there were some minor discrepancies in their testimony. For example, M.C. and A.P. testified that the girls ran to the video store, then went to M.C.'s house, then went back to the video store so that J.P. and A.P.'s older sister could pick them up. J.P. testified that the girls went to M.C.'s house and then to the video store. The girls' mothers testified that they never gave anyone permission to take their daughters anywhere.

¶8 Dunn's statement was played for the jury. In the statement, Dunn said that he had just met Cruz and was doing some work on Cruz's truck. He was driving Cruz because Cruz had been drinking and could not drive. Dunn stated that he picked up the girls from the house and drove them around, first to the St. John's house, then to Burgerville, and then to the house the girls identified as

M.C.'s house. However, he believed that Cruz had permission to pick the girls up and take them to M.C.'s house. He did not realize that something was wrong until the girls ran out of the car and across the field.

¶9 Jury voir dire was conducted in open court with Dunn present. After the prospective jurors were questioned and the attorneys exercised their challenges for cause, the trial court invited counsel to exercise peremptory challenges and to finalize jury selection at the clerk's station. The jury found Dunn guilty of one count of residential burglary and three counts of unlawful imprisonment. Dunn appeals.

## ANALYSIS

¶10 Dunn argues that the trial court violated his right to a public trial and his right to be present by allowing the attorneys to exercise peremptory challenges during a sidebar. Following Division Three's opinion in *State v. Love*, 176 Wn. App. 911, 309 P.3d 1209 (2013), we hold that the trial court did not violate Dunn's right to a public trial by allowing the attorneys to exercise peremptory challenges during a sidebar.

### PUBLIC TRIAL RIGHT

¶11 The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee a defendant the right to a public trial. *State v. Wise*, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). We review alleged violations of the public trial right de novo. *Wise*, 176 Wn.2d at 9. The threshold determination when addressing an alleged violation of the public trial right is whether the proceeding at issue even implicates the right. *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). In *Sublett*, our Supreme Court adopted a two-part "experience and logic" test to address this issue: (1) whether the place and process historically have been open to the press and general public (experience prong) and (2) whether

the public access plays a significant positive role in the functioning of a particular process in question (logic prong). 176 Wn.2d at 72-73. Both questions must be answered affirmatively to implicate the public trial right. *Sublett*, 176 Wn.2d at 73.

¶12 Dunn argues that the trial court violated his public trial right because the trial court conducted the peremptory challenges portion of jury selection at the clerk's station. In *Love*, Division Three of this court addressed whether challenges during voir dire implicate the public trial right. There, the court held that neither "prong of the experience and logic test suggests that the exercise of cause or peremptory challenges must take place in public." *Love*, 176 Wn. App. at 920. The public trial right does not attach to the exercise of challenges during jury selection. *Love*, 176 Wn. App. at 920. We agree with Division Three that experience and logic do not suggest that exercising peremptory challenges at the clerk's station implicates the public trial right. Accordingly, we hold that the trial court did not violate Dunn's public trial right and we affirm.

¶13 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

WORSWICK, C.J., and LEE, J., concur.

Review denied at 181 Wn.2d 1030 (2015).