FILED
COURT OF APPEALS
DIVISION II

2014 DEC -2 AM 8:56

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>DUSTIN WADE MARKS,<br><br>Appellant. | No. 44919-6-II<br><br><br>PART PUBLISHED OPINION |

MAXA, J. — Dustin Marks appeals his convictions for assault, unlawful possession of a firearm, vehicle prowling, and reckless endangerment. He argues that the trial court violated his right to a public trial by allowing the parties to exercise peremptory juror challenges in writing at a sidebar conference rather than orally. We hold that the dismissal of prospective jurors with peremptory challenges does not implicate the public trial right, and therefore that the trial court's procedure did not violate that right. In the unpublished portion of this opinion we address Marks' challenge of the trial court's imposition of discretionary legal financial obligations (LFOs) as part of his sentence. We affirm Marks' convictions and sentence.

## FACTS

The State charged Marks with first degree assault with a firearm enhancement, first degree unlawful possession of a firearm, second degree vehicle prowling, and reckless endangerment. The charges arose from an incident in which he fired shots at a person who confronted him while he was prowling cars. The case proceeded to a jury trial.

Following voir dire of prospective jurors, the trial court convened with counsel at a sidebar in open court to take the parties' peremptory challenges of those prospective jurors. Counsel noted their challenges in writing on a document titled "Peremptory Challenges," which later was filed in open court. Clerk's Papers at 80. After the sidebar, the trial court went back on the record and announced the selected members of the jury. Marks did not object to this process, and the jury was duly empaneled. After a three-day trial, Marks was convicted on all counts.

Marks appeals.

## ANALYSIS

Marks argues that the trial court violated his public trial right by allowing counsel to make peremptory challenges in writing rather than announcing the challenges on the record. We hold that the exercise of peremptory challenges does not implicate the public trial right.

### A.    LEGAL PRINCIPLES

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee a defendant the right to a public trial. *State v. Wise*, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). In general, this right requires that certain proceedings be held in open court unless application of the five-factor test set forth in *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995), supports closure of the courtroom. Whether a courtroom closure violated a defendant's right to a public trial is a question of law we review de novo. *Wise*, 176 Wn.2d at 9.[1]

---

[1] Marks did not object to the alleged closure below. However, "a defendant does not waive his right to a public trial by failing to object to a closure at trial." *Wise*, 176 Wn.2d at 15. In addition, the defendant need not show that the violation caused any prejudice. *Wise*, 176 Wn.2d at 16. A courtroom closure without consideration of the *Bone-Club* factors is structural error warranting a new trial. *Wise*, 176 Wn.2d at 15.

The threshold determination when addressing an alleged violation of the public trial right is whether the proceeding at issue even implicates the right. *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). "[N]ot every interaction between the court, counsel, and defendants will implicate the right to a public trial or constitute a closure if closed to the public." *Sublett*, 176 Wn.2d at 71. To make this determination, our Supreme Court in *Sublett* adopted an "experience and logic" test. 176 Wn.2d at 73.[2]

To address whether there was a court closure implicating the public trial right, we employ a two-step process. *State v. Wilson*, 174 Wn. App. 328, 335-37, 298 P.3d 148 (2013). First, we consider whether the particular proceeding at issue "falls within a category of proceedings that our Supreme Court has already acknowledged implicates a defendant's public trial right."[3] *Wilson*, 174 Wn. App. at 337; *see also Wise*, 176 Wn.2d at 11. Second, if the proceeding at issue does not fall within a specific protected category, we determine whether the proceeding implicates the public trial right using the *Sublett* experience and logic test. *Wilson*, 174 Wn. App. at 335.

---

[2] Arguably, the preliminary question is whether or not the proceeding at issue ever was closed to the public. Here, the exercise of peremptory challenges occurred in open court and was recorded on a document that was filed in open court. The State suggests on this basis that there was no closure of the courtroom at all and therefore that *Bone-Club* does not even apply. We decline to address this issue because we affirm on other grounds.

[3] Our Supreme Court recently stated in *State v. Smith* that "sidebars do not implicate the public trial right." ___ Wn.2d ___, 334 P.3d 1049, 1051 (2014). And the court concluded after conducting the experience and logic test that a sidebar conference does not implicate the public trial right. *Smith*, 334 P.3d at 1055. However, *Smith* involved legal argument on evidentiary issues at sidebar. 334 P.3d at 1051. The court framed the case issue as whether "sidebar conferences *on evidentiary matters*" implicate the right. 334 P.3d at 1052 (emphasis added). As a result, we discern that the court's holding is limited to that issue.

B.    PUBLIC TRIAL RIGHT AND PEREMPTORY CHALLENGES

Marks argues that his public trial right was violated because the right attaches to voir dire, and the exercise of peremptory challenges is part of voir dire. We disagree that the exercise of peremptory challenges is a part of voir dire.

Our Supreme Court repeatedly has held that the public trial right applies to "jury selection." *E.g.*, *Wise*, 176 Wn.2d at 11; *State v. Brightman*, 155 Wn.2d 506, 515, 122 P.3d 150 (2005). However, all of the Supreme Court's public trial right cases regarding jury selection have involved the actual questioning of jurors. *E.g.*, *Wise*, 176 Wn.2d at 11-12; *State v. Paumier*, 176 Wn.2d 29, 35, 288 P.3d 1126 (2012). No Supreme Court case has held that the public trial right applies to the dismissal of jurors after the questioning is over.

In *Wilson*, we held that only the voir dire aspect of jury selection automatically implicates the public trial right. 174 Wn. App. at 338-40. We used the term "voir dire" as synonymous with the actual questioning of jurors, referring to the " 'voir dire' of prospective jurors who form the venire." *Wilson*, 174 Wn. App. at 338. The plurality opinion of our Supreme Court in *State v. Slert* quoted this statement with approval. ___Wn.2d ___, 334 P.3d 1088, 1092 (2014).[4] This usage is not consistent with including the exercise of peremptory juror challenges in the meaning of "voir dire."

---

[4] Justice Gonzalez's lead opinion in *Slert* was only joined by three other justices. 334 P.3d at 1094. However, in her dissent Justice Stephens agreed that voir dire "encompasses the individual examination of jurors concerning their fitness to serve in a particular case." 334 P.3d at 1095 (Stephens, J., dissenting). Justice Stephens disagreed with the plurality opinion in part because she believed that the consideration of jury questionnaires constituted an "examination" of those jurors and therefore was voir dire. 334 P.3d at 1095-96 (Stephens, J., dissenting).

In addition, CrR 6.4 distinguishes between voir dire and the exercise of peremptory challenges. CrR 6.4(b) states: "A voir dire examination shall be conducted for the purpose of discovering any basis for challenge for cause and for the purpose of gaining knowledge to enable the intelligent exercise of peremptory challenges." Significantly, CrR 6.4(b) refers to the voir dire *examination.* The term "examination" necessarily refers only to the questioning of jurors, not to their dismissal. And CrR 6.4(b) states that voir dire is for the *purpose* of exercising peremptory challenges, which shows that the questioning of jurors and the exercise of peremptory challenges are separate phases in the jury selection process.

Based on *Wilson* and CrR 6.4(b), we hold that the exercise of peremptory challenges is not part of voir dire. Therefore, we hold that the exercise of peremptory challenges does not fall within the category of proceedings that automatically implicates a defendant's public trial right.

C.    EXPERIENCE AND LOGIC TEST

Because we hold that the exercise of peremptory challenges does not fall within a category that our Supreme Court has recognized for application of the public trial right, we next must apply the experience and logic test to determine whether the public trial right is implicated. We hold that the exercise of peremptory challenges does not satisfy the experience and logic test and therefore does not implicate Marks' public trial right.

The experience and logic test requires us to consider (1) whether the process and place of a proceeding historically have been open to the press and general public (experience prong), and (2) whether access to the public plays a significant positive role in the functioning of the proceeding (logic prong). *Sublett*, 176 Wn.2d at 72-73. If the answer to both prongs is yes, then the defendant's public trial right attaches and a trial court must apply the *Bone-Club* factors before closing the proceeding to the public. *Sublett*, 176 Wn.2d at 72-73.

The issue of whether peremptory challenges made during a sidebar conference implicate the public trial right under the experience and logic test is controlled by our decision in *State v. Dunn*, 180 Wn. App. 570, 321 P.3d 1283 (2014). In *Dunn*, we held that the exercise of peremptory challenges did not satisfy either prong of the test. 180 Wn. App. at 575. In deciding this issue, we adopted the reasoning used by Division Three of this court in *State v. Love*, 176 Wn. App. 911, 309 P.3d 1209 (2013).

The court in *Love* noted the absence of any authority suggesting that historical practices required that peremptory challenges be exercised in public. 176 Wn. App. at 918-19. The court in *Love* cited *State v. Thomas*, 16 Wn. App. 1, 13, 553 P.2d 1357 (1976), in which this court suggested that peremptory challenges could be made in private. 176 Wn. App. at 918. The court in *Love* also stated that there is no need for public oversight of peremptory challenges, and that the written record of juror challenges satisfies the public interest. 176 Wn. App. at 919-20. We agree with this analysis.

Under *Dunn* and *Love*, exercising peremptory challenges does not implicate a defendant's public trial right under the experience and logic test. Accordingly, we hold that the trial court's procedure for exercising peremptory challenges in writing did not violate Marks' public trial right. We therefore affirm Marks' convictions.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

Marks appeals his sentence on grounds that the trial court did not comply with statutory requirements by failing to consider his ability to pay the legal financial obligations (LFOs) it assessed against him. Marks argues that the evidence does not support the trial court's finding

6

that he had the ability to pay discretionary LFOs. However, Marks did not raise this issue below and therefore, we decline to consider it for the first time on appeal.

At Marks' sentencing, the court imposed both mandatory and discretionary LFOs amounting to $2,300. The trial court found that Marks had the ability or likely future ability to pay the LFOs. Marks did not object to this finding, or to the imposition of the LFOs generally. We generally will not consider a challenge to such a finding for the first time on appeal. *State v. Blazina*, 174 Wn. App. 906, 911-12, 301 P.3d 492, *review granted*, 178 Wn.2d 1010 (2013); RAP 2.5(a).

We have discretion under RAP 2.5(a) to consider unpreserved challenges to findings on a defendant's ability to pay LFOs where the reasons for the challenge are particularly compelling. *See Blazina*, 174 Wn. App. at 911; *State v. Bertrand*, 165 Wn. App. 393, 398, 404, 267 P.3d 511 (2011) (considering such a challenge even though the defendant failed to object below when the facts showed that the defendant was disabled and unable to work and she was required to begin paying within 60 days of sentencing). But Marks has not shown any compelling reason to consider the issue in this case. *See Blazina*, 174 Wn. App. at 911 (refusing to consider the defendant's challenge for the first time on appeal because the facts were not similar to those in *Bertrand*). Moreover, Marks can contest his ability to pay if the State attempts to enforce the LFOs. *See Bertrand*, 165 Wn. App. at 405.

We decline to reach Marks' challenge to the trial court's finding that he had the ability to pay LFOs. Therefore, we affirm the trial court's imposition of discretionary LFOs.

We affirm Marks' convictions and sentence.

MAXA, J.

We concur:

BJORGEN, A.C.J.

MELNICK, J.