FILED
COURT OF APPEALS
DIVISION II

2015 JUL 10 AM 9: 47

STATE OF WASHINGTON

BY_____
       DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46101-3-II |
| Respondent, | |
| v. | |
| IRVING B. LYLE, | PUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — Irving B. Lyle appeals the legal financial obligations (LFOs) the trial court imposed following his bench trial conviction for failure to register as a sex offender. He argues that the trial court failed to make an individualized determination on his present and future ability to pay before imposing the LFOs. He further argues that defense counsel provided ineffective assistance by failing to object to the LFOs. We hold that (1) because Lyle failed to challenge his LFOs and was sentenced after we issued *State v. Blazina*, 174 Wn. App. 906, 301 P.3d 492 (2013), *remanded*, 182 Wn.2d 827, 344 P.3d 680 (2015), he has waived this issue, and (2) Lyle's ineffective assistance of counsel claim fails because the record does not establish that defense counsel's failure to object was prejudicial. Accordingly, we affirm.

## FACTS

Following a bench trial, the trial court convicted Lyle of failure to register as a sex offender. At the March 14, 2014 sentencing hearing, the State requested various LFOs.

During the course of the sentencing hearing, in the context of discussing his request for an exceptional sentence downward, Lyle presented some evidence about his financial situation, his alleged disabilities, and his work history prior to his arrest. But the defense never mentioned any LFOs or discussed Lyle's present or future ability to pay LFOs.

The State argued against the exceptional sentence downward and asserted that Lyle's claims about any disability or having been a prisoner of war were unsubstantiated. But the State never discussed Lyle's present or future ability to pay LFOs.

The trial court denied Lyle's request for an exceptional sentence after acknowledging that Lyle's character witness had trusted Lyle to work on his property but noting that Lyle had not presented any documentation supporting his other claims. The trial court sentenced Lyle to 44 months of total confinement. Although the trial court mentioned it was imposing the LFOs, it did not say anything about Lyle's current or future ability to pay those LFOs.

The only mention of Lyle's ability to pay the LFOs was in a boilerplate section of Lyle's judgment and sentence, which stated,

> **ABILITY TO PAY LEGAL FINANCIAL OBLIGATIONS.** The court has considered the total amount owing, the defendant's past, present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change. The court finds that the defendant has the ability or likely future ability to pay the legal financial obligations imposed herein.

Clerk's Papers at 20.

Lyle appeals the LFOs.

ANALYSIS

## I. LFO ISSUE WAIVED

Lyle argues that the trial court failed to make an individualized determination on his ability

to pay before imposing the LFOs. The State argues that this issue is not ripe for review until the

State attempts to enforce the LFOs, that the issue was not preserved for appeal, and that the trial

court properly considered Lyle's ability to pay.

Our Supreme Court recently rejected the State's ripeness argument in *Blazina*, 182 Wn.2d

at 833 n.1. Accordingly, the fact that the State may not yet be attempting to collect Lyle's LFOs

does not preclude our review of this issue.

But Lyle did not challenge the trial court's imposition of LFOs at his sentencing, so he may

not do so on appeal. *Blazina*, 174 Wn. App. at 911. Our decision in *Blazina*, issued before Lyle's

March 14, 2014 sentencing, provided notice that the failure to object to LFOs during sentencing

waives a related claim of error on appeal.[1] 174 Wn. App. at 911. As our Supreme Court noted,

---

[1] The dissent argues that our limiting review of unpreserved errors to those cases in which the sentencing was held before our 2013 *Blazina* decision is inappropriate because we had in other cases refused to address challenges to LFOs based on the ability to pay because the issue was not ripe for review. Dissent at 7 (citing *State v. Lundy*, 176 Wn. App. 96, 108, 308 P.3d 755 (2013)). The dissent asserts that the use of the ripeness doctrine could have suggested to counsel that it would be futile to object to the imposition of LFOs at trial. We disagree because a timely objection would not be futile.

The ripeness doctrine addresses only *when* a court can review an issue—it is not relevant to whether an issue was properly preserved for review. *See Lee v. Oregon*, 107 F.3d 1382, 1387-88 (9th Cir. 1997) ("[T]he ripeness doctrine can be specifically understood 'as involving the question of when may a party seek preenforcement review.'" (quoting Erwin Chemerinsky, *Federal Jurisdiction* § 2.4 at 100 (1989))). Even if the issue were to become ripe at a later date, the defendant could not raise the issue unless it had been properly preserved at trial or review was allowed under RAP 2.5(a).

3

an appellate court may use its discretion to reach unpreserved claims of error. *Blazina*, 182 Wn.2d at 830. We decline to exercise such discretion here.

## II. NO INEFFECTIVE ASSISTANCE OF COUNSEL

Lyle further argues that defense counsel provided ineffective assistance of counsel by failing to challenge the LFOs. Based on this record, we disagree.

We review an ineffective assistance claim de novo, beginning with a strong presumption that trial counsel's performance was adequate and reasonable. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To prevail on an ineffective assistance of counsel claim, the appellant must show both deficient performance and resulting prejudice; failure to show either prong defeats this claim. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002).

Lyle is correct that defense counsel did not challenge the LFOs based on Lyle's current or future ability to pay. Because the sentencing hearing was after we issued our opinion in *Blazina*, counsel should have been aware that to preserve any issue related to the LFOs he was required to object. Thus, Lyle has arguably shown deficient performance, and we must next examine whether this deficient performance was prejudicial.

To show prejudice, Lyle must establish, "based on the record developed in the trial court, that the result of the proceeding would have been different but for counsel's deficient representation." *State v. McFarland*, 127 Wn.2d 322, 337, 899 P.2d 1251 (1995). Although the record contains some information about Lyle's financial status, he fails to show prejudice on this record.

Lyle presented some evidence relevant to his financial situation during the sentencing hearing. But this information was presented in the context of Lyle's request for an exceptional sentence downward, not to provide evidence related to Lyle's current or future ability to pay. These facts suggest that Lyle may be disabled but that he was able to do at least some work as evidenced by the fact he had been working for several months before the sentencing. The trial court stated that many of Lyle's assertions were unsupported and there are no additional facts in the record, such as whether Lyle has additional debt, which would allow us to determine whether the trial court would have imposed fewer or no LFOs if defense counsel had objected. Because Lyle must establish prejudice on this record and the record is not sufficient for us to determine whether there is a reasonable probability that the trial court's decision would have been different, his ineffective assistance of counsel claim fails.[2]

Accordingly, we affirm Lyle's sentence.

JOHANSON, C.J.

I concur:

SUTTON, J.

---

[2] We note that Lyle may be able to petition for remission of his LFOs under RCW 10.01.160(4).

No. 46101-3-II

BJORGEN, J. (dissenting) — In *State v. Blazina*, 182 Wn.2d 827, 830, 833-34, 344 P.3d 680 (2015), our Supreme Court exercised its discretion under RAP 2.5 to decide whether trial courts must make an individualized inquiry into a defendant's current and future ability to pay before imposing discretionary legal financial obligations (LFOs) under RCW 10.01.160(3). The court reached this issue, even though the defendant had not raised it at sentencing, because it found that the pernicious consequences of "broken LFO systems" on indigent defendants "demand" that it reach the issue, even though it was not raised in the trial court. *Blazina*, 182 Wn.2d at 833-34.

Before us, Lyle raises the same issue in the same posture: he, too, is an indigent who failed to raise the issue below. The same effects of the LFO system that led the Supreme Court to reach the issue in *Blazina* face Lyle as much as they faced Blazina. If those consequences demanded that the Supreme Court reach the issue in *Blazina*, they surely demand the same of us here.

As the majority points out, the Supreme Court in *Blazina* held that this court properly exercised its discretion to decline review when we issued our *Blazina* decision in 2013. *Blazina*, 182 Wn.2d at 833-34. The doctrinal tectonics, however, have shifted since our decision in *Blazina*. In that decision we followed the well trampled path of declining to reach issues for the first time on appeal if they did not fall within the exceptions of RAP 2.5. Now, the Supreme Court has concluded that the hazards of our LFO system demand consideration of this same issue, even if not raised below. As an indigent, Lyle confronts those same hazards. Although

6

our declining of review in 2013 was a sound exercise of discretion then, it is on much shakier grounds now, after the Supreme Court has spoken.

In addition, the Supreme Court's holding that we properly declined review in *Blazina* in 2013 came at the close of its demonstration that *Ford*[3] and its progeny do not create a right to review unpreserved LFO errors. *Blazina*, 182 Wn.2d at 833-34. Thus, this holding cannot serve as a license to continue to decline review of the same issue, when the Supreme Court has also made clear that these same circumstances demand the exercise of discretion *to* review.

Finally, the majority argues that any need to review unpreserved errors cannot extend to sentencing proceedings held after our *Blazina* decision in 2013, since that decision categorically required such errors to be raised at sentencing. However, during the interval between our *Blazina* decision and that of the Supreme Court, the law was also clear that a challenge to LFOs based on ability to pay was not generally "ripe for review until the State attempts to curtail a defendant's liberty by enforcing them." *State v. Lundy*, 176 Wn. App. 96, 107-08, 308 P.3d 755 (2013); *see also State v. Baldwin*, 63 Wn. App. 303, 310, 818 P.2d 1116 (1991), *amended*, 837 P.2d 646 (1992), and *State v. Blank*, 131 Wn.2d 230, 242, 930 P.2d 1213 (1997). The central rationale behind this rule was that only at enforcement could the ability to pay be meaningfully weighed. *See, e.g., Blank*, 131 Wn.2d at 242. The case law deviated from this rule in the face of circumstances such as those presented in *State v. Bertrand*, 165 Wn. App. 393, 405, 267 P.3d 511 (2011), where a disabled defendant was ordered to commence payment of LFOs within 60 days of entry of judgment and sentence while still incarcerated.

---

[3] *State v. Ford*, 137 Wn.2d 472, 973 P.2d 452 (1999).

No. 46101-3-II

During the interval between the two *Blazina* decisions, RCW 10.01.160(3) was also in effect, stating that

> The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

The case law, however, has interpreted this provision to be subject to Lundy's ripeness restriction. *See State v. Thomas*, 185 Wn. App. 1058, 2015 WL 728245, at \*6 (2015).

Thus, between the two *Blazina* decisions the law took the pose of a Janus, telling parties both that they must raise the issue of ability to pay LFOs at sentencing and that it would be futile to do so. This contradiction is not relieved by holding that a defendant must raise the issue at sentencing, even though he may not know until some distant enforcement stage whether he actually has a meaningful challenge. With this equivocation in the law after our *Blazina* decision, that decision should not serve as the threshold beyond which this error cannot be raised for the first time on appeal. Only with the Supreme Court's *Blazina* decision is that threshold crossed.

For these reasons, I would hold that Lyle is not barred from raising his challenge to LFOs for the first time on appeal.

BJORGEN, J.

8