# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47132-9-II |
| Respondent, | |
| v. | |
| FOREST STORM NAILLON, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. – Forest Storm Naillon appeals his jury trial convictions for unlawful possession of a stolen vehicle and making or possessing motor vehicle theft tools, and the trial court's imposition of discretionary legal financial obligations (LFOs).  He argues that the trial court failed to consider his current and future ability to pay before imposing the discretionary LFOs.[1]  In a statement of additional grounds for review (SAG), Naillon further contends the trial court impeded his constitutional right to testify in his own defense when it advised him that evidence of his prior conviction might be admissible if he were to testify.  We affirm the convictions.  But, because the record shows that the trial court failed to comply with its obligation under RCW 10.01.160(3) and *State v. Blazina*[2] to make an individualized inquiry into Naillon's current and future ability to pay

---

[1] Naillon also argues that he received ineffective assistance of counsel based on his counsel's failure to challenge the discretionary LFOs at sentencing.  Because we remand to the trial court for a new hearing on the discretionary LFOs, we do not reach the ineffective assistance of counsel claim.

[2] 182 Wn.2d 827, 838-39, 344 P.3d 680 (2015).

before imposing the discretionary LFO's, we remand to the trial court for reconsideration of the discretionary LFOs consistent with RCW 10.01.160(3) and *Blazina*.[3]

FACTS

The State charged Naillon with unlawful possession of a stolen vehicle and making or possessing motor vehicle theft tools.[4]  Before trial, the State moved under ER 404(b) to admit evidence that when Naillon was arrested in 2006 for possession of stolen property, he was driving a stolen car and possessed shaved keys.

The trial court denied the motion to admit this evidence, ruling that it was unfairly prejudicial.  But the trial court further stated:

> Now, I want to be very clear about something.  Let's assume, hypothetically, the defendant takes the stand, then we have a whole new conversation and I want to be fair about that.  So it is not in now, but he takes the stand, we've got a whole different conversation going on.

Verbatim Report of Proceedings (VRP) (Dec. 9, 2014) at 51.

Naillon's defense at trial was that he had purchased the car from someone for $500.  Naillon did not testify.  The jury convicted Naillon of unlawful possession of a stolen vehicle and making or possessing motor vehicle theft tools.

---

[3] At this hearing, the trial court should also consider Naillon's motion to waive his right to be present at the LFO hearing.

[4] The making or possessing motor vehicle theft tools charge was based on Naillon's possession of "shaved key[s]" at the time of his arrest.  Clerk's Papers at 1-2.  Shaved keys are keys that have been filed down.

At the January 16, 2015 sentencing hearing,[5] Naillon requested a DOSA[6] sentence, and the parties discussed Naillon's ongoing drug related issues. The trial court denied the DOSA request and sentenced Naillon to 26 month's confinement on the unlawful possession of a stolen vehicle conviction.[7] The trial court also imposed a 364 day suspended sentence on the making or possession motor vehicle theft tools conviction.

The trial court also imposed a total of $1,300 in LFOs,[8] including a $500 discretionary LFO for his court appointed attorney and defense costs. The judgment and sentence for the felony unlawful possession of a stolen vehicle conviction contains the following boilerplate language:

> ABILITY TO PAY LEGAL FINANCIAL OBLIGATIONS. The court has considered the total amount owing, the defendant's past, present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change. The court finds that the defendant has the ability or likely future ability to pay the legal financial obligations imposed herein. RCW 9.94A.753.

Clerk's Papers (CP) at 70. Similarly, the judgment and sentence for the gross misdemeanor possessing motor vehicle theft tools conviction states, "The court finds that the defendant is able to pay said fee without undue financial hardship." CP at 82.

---

[5] Naillon was 31 at the time of sentencing.

[6] Drug Offender Sentencing Alternative. RCW 9.94A.660.

[7] Naillon's offender score based on his prior offenses was seven points.

[8] The sentencing court also imposed $1200 in LFOs on the gross misdemeanor conviction, which sentence was suspended, and it ordered the $1200 in LFOs to run concurrently.

There was no discussion of Naillon's current and future ability to pay during the sentencing hearing. And Naillon did not object to any of the LFOs. But the trial court did find him indigent for purposes of the appeal.

In a later motion for review at public expense, Naillon stated that (1) he was not employed, (2) he had previously been found indigent, (3) he did not own real estate, stocks, bonds, or notes, (4) he was not the beneficiary of a trust or other account, (5) he did not own a motor vehicle or any substantial items of personal property, (6) he did not have any dividend income, and (7) he had no money in any bank accounts. Naillon also stated that he was receiving $180 a month in food stamps.

Naillon appeals his convictions and the discretionary LFOs.

ANALYSIS

I. LFO ISSUE

Naillon contends, for the first time on appeal, that the trial court erred when it imposed discretionary LFOs without making an individualized finding that he had the current and future ability to pay. Generally, we may decline to review issues raised for the first time on appeal. RAP 2.5(a). Following our Supreme Court's opinion in *State v. Marks*, 185 Wn.2d 143, ___ P.3d ___, (2016), we decline to follow our prior approach in *State v. Lyle*, 188 Wn. App. 848, 355 P.3d 327 (2015), *petition for review granted in part*, ___ Wn.2d ___, 365 P.3d 1263 (2016). Instead, we will determine whether to exercise our discretion to reach the LFO issue on a case by case basis. We choose to exercise our discretion to examine this issue.

RCW 10.01.160(3) provides:

> The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

Although the record of Naillon's financial circumstances is sparse, the evidence presented at the sentencing hearing and his motion for indigency suggest that Naillon currently has no assets; that he has ongoing drug issues; and that he was receiving food stamps at the time of his arrest, suggesting that before sentencing he had low to no income. The sentencing hearing also disclosed that Naillon had several prior felony convictions. But despite information in the record suggesting that Naillon did not have the current ability to pay his LFO obligations and that his incarceration, his criminal record, and his drug use issues could potentially prevent him from holding employment following his release from custody, the trial court never inquired into Naillon's work history, his education, whether he could potentially hold a job in the future, whether he has any outstanding debts (such as other outstanding LFO obligations from prior convictions), or whether he has any disabilities that would prevent him from earning an income. Thus, the record shows that the trial court failed to make an individualized inquiry into Naillon's current and future ability to pay LFOs as required under RCW 10.01.160(3). Accordingly, we remand to the trial court for reconsideration of the discretionary LFOs consistent with RCW 10.01.160(3) and *Blazina*, 182 Wn.2d at 838-39.

## II. SAG ISSUE

In his SAG, Naillon contends that the trial court impeded his constitutional right to testify by commenting during the ER 404(b) discussion that the 2006 possession of stolen property conviction, or the facts surrounding that conviction, could be used against him if he testified.[9] This contention has no merit.

The trial court commented that it would have to reevaluate its decision to exclude the ER 404(b) evidence if Naillon chose to testify. The trial court's comment did not improperly chill Naillon's constitutional right to testify[10] but merely ensured that counsel and Naillon understood that the court's analysis of the admissibility of the prior conviction and the facts surrounding that crime could potentially change if Naillon were to testify. For instance, if Naillon had testified, there was a possibility that his prior possession of shaved keys could have been potentially admissible to impeach Naillon if he, for instance, denied any knowledge of shaved keys. Naillon does not show that the trial court intended to chill his constitutional right to testify in his defense.

---

[9] Naillon also asks that he be allowed to waive his appearance if we remand to the trial court on the LFO issue. On remand, the trial court should address this issue as a motion to waive his right to be present.

[10] U.S. Const. amend. VI.

CONCLUSION

We affirm the convictions. But, we remand to the trial court for reconsideration of the discretionary LFOs consistent with RCW 10.01.160(3) and *Blazina* and to consider Naillon's motion to waive his right to be present at the LFO hearing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

BJORGEN, C.J.

MAXA, J.